136

In the Matter of THOMAS J.P. COURTNEY, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 26, 1991

### APPEARANCES OF COUNSEL

*Judith N. Stein* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Nicholas C. Cooper* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Thomas J.P. Courtney was admitted to the practice of law in New York by the First Judicial Department on July 8, 1975. At all times relevant herein, respondent has maintained an office for the practice of law in the First Department.

By notice of petition dated November 7, 1989, petitioner Departmental Disciplinary Committee (DDC) sought an order pursuant to 22 NYCRR 603.16 (b) (1) suspending respondent from the practice of law, effective immediately, and for an indefinite period, upon the ground that he was incapacitated from continuing to practice law by reason of mental infirmity. The DDC also requested an order directing the examination of respondent by an independent psychiatrist.

The DDC instituted this proceeding after it began receiving unsolicited writings from respondent in mid-July 1989. These writings consisted of letters, articles and poems which were rambling, incoherent and vulgar. They also contained racist remarks and lewd references. Since the DDC had not contacted respondent nor had it requested any information from him, a file was opened *sua sponte* to investigate his mental stability and any potential danger he might pose to the public.

The investigation revealed that respondent, a member of the Criminal Law and Family Law Panels of the 18-B Assigned Counsel Plan of the First Department since 1978, resigned in December 1986 after receiving a letter of caution from the Family Court Screening Committee. The letter was issued because of a complaint received concerning respondent's fitness to serve on the Panel. After respondent resigned, the complaint was not pursued.

Pursuant to the 18-B program's Central Screening Committee's suggestion, respondent sought professional help from Dr. Thomas F. Fogarty who saw respondent 55 times from July 3, 1986 to April 7, 1989. Dr. Fogarty determined that respondent was not suffering from a mental disease which would impair his ability to represent clients in Criminal Court. Respondent thereafter sought reinstatement to the Assigned Counsel Plan but instead of submitting the information requested, he submitted rambling, irrelevant poems, essays and cartoons. The Central Screening Committee rejected his applications.

In his answer to the petition, respondent claimed that he only temporarily resigned from the Panel under pressure from

the 18-B Administrator and that the only complaint against him had been closed without sanctions being imposed. He further alleged that there was no basis for the petition since Dr. Fogarty had concluded that he did not suffer from any mental disease. Respondent further maintained that he had never been disciplined as an attorney during his 14 years of practice, that no complaint of professional misconduct was pending against him, that to suspend him without a hearing would deprive him of due process of law, that petitioner lacked probable cause to suspend him and that his "writings" were protected by the First Amendment.

On March 7, 1990, this court held the petition in abeyance pending an examination of respondent by an independent psychiatrist and receipt of his report. On June 25, 1990, respondent was examined by Dr. Stanley L. Portnow who concluded that respondent's ability to function as an attorney was compromised by a pervasive mood disorder. Dr. Portnow found that respondent "is capable of going from the inappropriate extremes of elation to a more subdued and reasonable state in very short periods of time. His mood is elevated and expansive, and at times he is irritable. He speaks rapidly with a definite flight of ideas."

The psychiatrist also noted that the flow of respondent's thought processes as well as their content were alarming. For example, respondent told Dr. Portnow that the ills of the world and particularly, the DDC, were caused by the fact that women have two X chromosomes and men have one X and one Y chromosome. He then explained that certain members of the judiciary and the Legislature are on the political left because of chromosomal imbalance which makes them half women. He also expressed the belief that women should stop acting as if they had the male chromosome and stay home to care for their husbands and children. The independent psychiatrist determined that respondent exercised poor judgment, made inappropriate remarks and had the potential for "acting out".

In sum, Dr. Portnow had no doubt that respondent was psychologically ill and that this became clinically apparent after he terminated treatment with Dr. Fogarty in 1989. The report concluded with the recommendation that respondent seek further psychiatric treatment since his illness, left untreated, could have "disastrous consequences".

On August 13, 1990, the DDC received an affirmation from

Assistant Corporation Counsel Clark V. Richardson, of the Family Court Division Bronx County, detailing respondent's inappropriate behavior in Family Court. Specifically, Richardson alleged that respondent had disseminated offensive material around the Bronx Family Court despite being told to cease such behavior. He also informed the Committee that many attorneys in the court had expressed their dissatisfaction with respondent's behavior and their fears that respondent's actions could cause others to react in a violent manner. The Assistant Corporation Counsel also noted the deterioration of respondent's courtroom ability and personal behavior over the past 10 years.

The DDC, by petition dated August 16, 1990, sought to renew its previous request to immediately suspend respondent from the practice of law on the ground of mental incapacity. Respondent cross-moved to dismiss the petition, claiming that there was another prior proceeding, namely, the November 6, 1989 petition, already pending between the same parties seeking the same relief. He also maintained that petitioner's petition seeking to suspend him from the practice of law without a hearing must be dismissed since it was based on hearsay allegations.

Petitioner thereafter submitted an additional affirmation detailing three sets of communications recently received from respondent. A mailgram, originally sent to this court, was also attached to the affirmation. These "writings", like the others written by respondent, are rambling, incoherent and vulgar and, in certain instances, constitute a threat to impede the administration of justice.

22 NYCRR 603.16 (b) (1) provides: "Whenever the Departmental Disciplinary Committee shall petition this court to determine whether an attorney is incapacitated from continuing to practice law by reason of physical or mental infirmity or illness or because of addiction to drugs or intoxicants, this court may take or direct such action as it deems necessary or proper to determine whether the attorney is so incapacitated, including examination of the attorney by such qualified experts as this court shall designate. If, upon due consideration of the matter, this court is satisfied and concludes that the attorney is incapacitated from continuing to practice law, it shall enter an order suspending him on the ground of such disability for an indefinite period and until further order of this court and any pending disciplinary proceedings against the attorney shall be held in abeyance."

The precaution of suspending an attorney because of mental disability is taken by a court to protect the public and further its confidence in and reliance upon the integrity and responsibility of the legal profession *(Matter of Rowe,* 73 NY2d 336, 338). The suspension is not a punishment or sanction *(supra).*

We are convinced, based upon the psychiatric reports, the affidavits submitted and respondent's behavior as evidenced by his "writings", that he is presently unable to carry on the practice of law in any meaningful way *(see, Matter of Cohen,* 92 AD2d 139; *Matter of Bruno,* 79 AD2d 235). Accordingly, the petition is granted to the extent of suspending respondent immediately for an indefinite period of time. Respondent may, of course, move for reinstatement upon a showing that he has regained his mental health.

Accordingly, the motion by the Departmental Disciplinary Committee for an order suspending respondent from the practice of law for an indefinite period and until further order of this court is granted, effective immediately.

MILONAS, J. P., ROSENBERGER, ELLERIN, KUPFERMAN and Ross, JJ., concur.

Respondent is suspended from practice as an attorney and counselor-at-law in the State of New York, effective February 26, 1991, and until the further order of this court; respondent's cross motion for dismissal of the petition is denied.